| | | |
|---|---|---|
| Frederick C. Gilliland, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 12-02048 (GK) |
| | : | |
| Carolyn W. Colvin, | : | |
| Acting Commissioner of | : | |
| Social Security, | : | |
| | : | |
| Defendant. | : | |
| | : | |

### MEMORANDUM OPINION

Frederick C. Gilliland ("Plaintiff" or "Gilliland") brings this action seeking judicial review of a final decision of the Acting Commissioner of the Social Security Administration ("Defendant" or "Commissioner") pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), denying his claim for disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq.

This matter is presently before the Court on Plaintiff's Motion for Judgment of Reversal [Dkt. No. 10] and Defendant's Motion for Judgment of Affirmance [Dkt. No. 11]. Upon consideration of the parties' cross-motions, the administrative record, the entire record herein, and for the reasons stated below, Plaintiff's Motion for Judgment of Reversal is hereby

**granted**, and Defendant's Motion for Judgment of Affirmance is hereby **denied**.

**I.    BACKGROUND**

**A.    Procedural Background**

On July 31, 1986, Plaintiff filed an application for disability insurance benefits ("DIB"), claiming that starting on April 13, 1985, headaches and fatigue left him disabled. Administrative Record ("AR") 22 [Dkt. No. 8].[1]

On November 23, 1988, Administrative Law Judge Russell Rowell ("ALJ Rowell") issued an opinion denying Plaintiff's application. AR 21-25. On January 18, 1990, the Social Security Administration's ("SSA") Appeal Council denied Plaintiff's intra-agency appeal. AR 33-34. Plaintiff did not and was not required to bring an action in federal court at that time.

In December of 1996, Plaintiff began working again, closing the period of alleged disability. AR 96, 139, 146. Accordingly, the period of alleged disability relevant to this matter covers April 13, 1985 to December 1, 1996. AR 14, 146.

On February 7, 2002, the United States District Court for the Middle District of Pennsylvania approved a class action settlement in the matter of Grant v. Comm'r, Soc. Sec. Admin.,

---

[1]    In January of 1986, Plaintiff, who is a Canadian citizen, began receiving Canada Pension Disability Benefits. AR 14.

111 F. Supp. 2d 556 (M.D. Pa. 2000). AR 35-37. The class included "all applicants for Social Security disability benefits . . . who received an adverse decision from [ALJ] Russell Rowell . . . on or after January 1, 1985." AR 35. As part of the settlement, the SSA agreed to provide each eligible class member with de novo review of his or her application by a different ALJ. AR 36. Defendant concluded that Plaintiff's DIB claim was eligible for de novo review under the Grant settlement and sent Plaintiff a letter informing him of his right to another hearing. AR 63-64.

On December 14, 2011, ALJ James Mangrum ("ALJ Mangrum" or "the ALJ") held a hearing at which Plaintiff, his counsel, and a vocational expert were present. AR 233-58.

On January 26, 2012, the ALJ denied Plaintiff's claim, ruling that Plaintiff had not shown that he was disabled during the period from April 13, 1985 through December 1, 1996. AR 14-20.

On October 23, 2013, the SSA's Appeal Council denied Plaintiff's request for review of ALJ Mangrum's decision. AR 6 ("We found no reason under our rules to review the Administrative Law Judge's decision. Therefore, we have denied your request for review.").

On December 20, 2012, Plaintiff filed his Complaint challenging Defendant's denial of his claim for DIB pursuant to 42 U.S.C. § 405(g). [Dkt. No. 1]. On June 3, 2013, Defendant filed its Answer. [Dkt. No. 7]. On August 2, 2013, Plaintiff filed a Motion for Judgment of Reversal. [Dkt. No. 10]. On September 30, 2013, Defendant filed a Motion for Judgment of Affirmance and its Opposition to Plaintiff's Motion for Judgment of Reversal. [Dkt. No. 11]. Finally, on October 16, 2013, Plaintiff filed his Opposition to Defendant's Motion for Judgment of Affirmance and Response to Defendant's Opposition. [Dkt. No. 14].

## B. Factual Background

At the time he filed this action, Plaintiff Frederick Gilliland was 80 years old and resided in Kamloops, British Columbia, Canada. AR 120; Pl.'s Compl. [Dkt. No. 1]. Plaintiff had earned a General Equivalency Diploma, had completed journeyman steamfitter training, and had attended one year of college. AR 171. Before the onset of his headaches and fatigue, Plaintiff had worked as a pipefitter, pipefitter foreman, piping general foreman, and capital project superintendent. AR 140, 156-60. Most recently, he had served as a capital projects supervisor in a pulp mill. AR 140, 156-60.

Plaintiff was 52 years old when the alleged period of disability began on April 13, 1985 and was 62 years old when he returned to work, ending the alleged period of disability on December 1, 1996. AR 14-20, 146-47.

In March of 1985, Plaintiff started to experience debilitating headaches and severe fatigue. AR 14-19, 189-192, 214-215. Despite the investment of significant time and medical resources, none of the physicians who Plaintiff saw were able to provide a diagnosis for his condition. Id.

From February 19, 1986 until March 6, 1986, Plaintiff was hospitalized at Foothills Hospital in Calgary, Canada in order to identify the cause of his "nonspecific illness characterized by extreme fatigue, malaise, myalgias and left orbital and retro-orbital headache, accompanying a sense of tugging at the left eye." AR 189-192. During that time, a number of physicians examined Plaintiff, including a neurologist and an ear, nose, and throat specialist. Id.

The doctors at Foothills Hospital were unable to reach a definitive diagnosis of Plaintiff's condition. AR 189-192. The report from Foothills Hospital relates that "the headache follow[ed] a daily pattern with gradual onset in late morning, increasing in severity later in the day. [Plaintiff] did not

-5-

seem to have a nocturnal headache. . . . He ha[d] had several episodes of pain, severe enough to require hospitalization for narcotics." AR 189. Plaintiff underwent a battery of tests and examinations, all of which yielded "essentially unremarkable" results. AR 17-18. Dr. Mukherjee of Foothills Hospital did note, however, that during his examination Plaintiff demonstrated, "some focal tenderness in the left supraorbital region[.]" AR 190. Unable to determine the cause of Plaintiff's symptoms, the physicians at Foothills Hospital referred him to a pain management clinic. AR 191.[2]

In addition to the specialists at Foothills Hospital, Plaintiff also met with his family physician, Dr. H.C. Muendel. AR 146, 206, 214-215, 221. Plaintiff first visited Dr. Muendel in July of 1985 and described the reasons for his visits as "examination," "treatment," "diagnosis," and "prescri[ption of] medication." AR 206. Although at one point, Plaintiff described his visits with Dr. Muendel as "irregular," AR 206, by June 10, 1987, Plaintiff was visiting Dr. Muendel an average of twice a month, AR 221.

---

[2] The record contains mention of Epstein-Barr virus. AR 218, 234-58. Plaintiff brought up Epstein-Barr virus during his hearing and a letter written by a member of the Canadian Parliament asserts that Plaintiff had the virus. AR 18, 234-58. However, there is no evidence in the record that a physician ever diagnosed Plaintiff with that disease. AR 18-19.

Although many of Dr. Muendel's records were lost or
destroyed when he relocated his practice, AR 146, Plaintiff was
able to recover a letter summarizing his findings, AR 214-15.
The letter notes that Dr. Muendel was unable to identify a
"specific cause" of Plaintiff's intense, recurrent headache. Id.
"However, it ha[d] been determined that [the headache] [was]
related to the facial nerves over the left eye." Id. Dr. Muendel
wrote, "[t]hat nerve has been injected by myself and by the
anesthesiologist, Dr. Dhiel, several times with dramatic relief
of pain for a short period of time, half an hour to four hours
of dulling of the pain." Id. Near the end of his letter, Dr.
Muendel added that "[s]ince the onset of this, at present time,
incurable headache, [Plaintiff] has also become somewhat
depressed." Id.

Plaintiff's headaches severely affected nearly every aspect
of his life. AR 235-58. He experienced fatigue, "headaches,
joint pain, loss of memory, inability to express [himself],
[and] severe weakness." AR 165. Until Plaintiff's condition
abated in December of 1996, Plaintiff spent much of his time
sleeping, "required a big effort just to walk up a flight of
stairs[,]" and "spent his days in and out of consciousness." AR
17-20, 146-47.

Because of the passage of time between Plaintiff's submission of his DIB application in 1985 and his most recent hearing before ALJ Mangrum in 2011, many potentially relevant medical records are absent from the record. AR 236-37. Plaintiff was able to recover several documents from the Canadian government, including Dr. Muendel's letter and the report from Foothills Hospital. AR 237-42. Unfortunately, Defendant was unable to recover any of the 32 exhibits appended to ALJ Rowell's 1988 decision. AR 239.

### C.   Disability Determination Process

In order to qualify for disability insurance benefits, an individual must prove that she has a disability that renders her unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" for a period of "not less than 12 months." 42 U.S.C. §§ 423(a)(1) & (d)(1)(A). The claimant must support her claim of impairment with "[o]bjective medical evidence" that is "established by medically acceptable clinical or laboratory diagnostic techniques." 42 U.S.C. § 423(d)(5)(A). In addition, the impairment must be severe enough to prevent the claimant from doing either her previous work or any other work commensurate

with her age, education, and work experience that exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

The SSA uses a five-step evaluation process to determine whether a claimant is disabled, and thus, qualified for benefits. 20 C.F.R. § 404.1520(a)(1). A clear determination of disability or non-disability at any step is definitive, and the process ends at that step. 20 C.F.R. § 404.1520(a)(4).

In the first step, a claimant is disqualified if she is currently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i).

In the second step, a claimant is disqualified if she does not have a "severe medically determinable physical or mental impairment" that is proven "by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §§ 404.1508 & 404.1520(a)(4)(ii).

In the third step, a claimant qualifies for benefits if her impairment(s) meet(s) or equal(s) an impairment listed in 20 C.F.R. part 404, subpart P, appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii).

Between the third and fourth steps, the SSA relies on the entire record to make a determination of the claimant's residual functional capacity ("RFC"), which is "the most [the claimant]

can still do despite [the] limitations" created by the impairment. 20 C.F.R. §§ 404.1520(a)(4) & 404.1545(a)(1).

In the fourth step, a claimant is disqualified if her RFC shows that she is still able to do her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv).

In the fifth step, a claimant is disqualified if her RFC shows that she is capable of adapting to "other work that exists in the national economy." 20 C.F.R. §§ 404.1520(a)(4)(v) & 404.1545(a)(5)(ii). If the claim survives these five steps, then the claimant is determined to be disabled and qualifies for benefits. 20 C.F.R. § 404.1520(a)(4)(v).

This case centers on the second step of the five-step analysis.

### D.   The ALJ's Ruling

After the hearing on December 14, 2011, the ALJ found that Plaintiff "met the insured status requirements of the Social Security Act during the period from April 13, 1985, through December 1, 1996[,]" the alleged period of disability. AR 16. Continuing on to step one of the five-step disability evaluation process, the ALJ concluded that Plaintiff "did not engage in substantial gainful activity during the [alleged period of disability.]" AR 16.

At step two, the ALJ determined that, despite the many tests and examinations that Plaintiff underwent, "there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment[.]" AR 17. He noted that "[a]lthough the record confirms that the claimant had experienced a host of neurological and fatigue symptoms beginning on the alleged onset date of March 1985, all of the claimant's workup from March 1985 through his hospitalization in February and March 1986 were [sic] essentially unremarkable." AR 18. The opinion emphasizes that none of the physicians Plaintiff consulted were able to arrive at a "formal diagnosis" or identify a "specific cause" of Plaintiff's symptoms. AR 17-18.

Because failure at any step of the five-step evaluation process is fatal to a DIB claim, the ALJ did not proceed to step three. He concluded that Plaintiff "was not under a disability, as defined in the Social Security Act, at any time from April 13, 1985, the alleged onset date, through December 1, 1996[,]" and therefore, was not entitled to DIB. AR 20.

## II. STANDARD OF REVIEW

Judicial review in Social Security disability cases is limited by statute to determining whether the findings of the Commissioner are supported by substantial evidence. 42 U.S.C. §

405(g); Butler v. Barnhart, 353 F.3d 992, 999 (D.C. Cir. 2004); Poulin v. Bowen, 817 F.2d 865, 870 (D.C. Cir. 1987). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted), requiring "more than a scintilla, but . . . something less than a preponderance of the evidence[s]" Fla. Gas Transmission Co. v. FERC, 604 F.3d 636, 645 (D.C. Cir. 2010).

While the Court must "carefully scrutinize the entire record," Butler, 353 F.3d at 999, it may not reweigh the evidence or supplant the SSA's judgment on the weight of the evidence with its own judgment, Davis v. Heckler, 566 F.Supp. 1193, 1195 (D.D.C. 1983). It must only review whether the ALJ's findings are based on substantial evidence and whether the ALJ correctly applied the law. Butler, 353 F.3d at 999; Davis v. Shalala, 862 F.Supp. 1, 4 (D.D.C. 1994).

**III. ANALYSIS**

**A.  Weight Given to Dr. Muendel's Opinion**

Plaintiff contends that the ALJ (1) provided "insupportable" reasons for rejecting Dr. Muendel's opinion, (2) failed to give Dr. Muendel's opinion the "controlling weight" appropriate for a "treating physician," and (3) failed to

-12-

properly evaluate Dr. Muendel's medical opinion independently of the controlling weight analysis. Pl.'s Mot. at 3-6. Defendant argues that the ALJ correctly gave Dr. Muendel's opinion "little weight" because (1) Dr. Muendel lacked a "treatment relationship" with Plaintiff and (2) other evidence in the record contradicted Dr. Muendel's Opinion. Def.'s Opp'n at 6-9.

### 1. Treating Physician Rule

Our Court of Appeals has made clear that "[b]ecause a claimant's treating physicians have great familiarity with [her] condition, their reports must be accorded substantial weight." Butler v. Barnhart, 353 F.3d 992, 1003 (D.C. Cir. 2004) (quoting Williams v. Shalala, 997 F.2d 1494, 1498 (D.C. Cir. 1993)). "A treating physician's report 'is binding on the fact-finder unless contradicted by substantial evidence.'" Id. Thus, an "ALJ 'who rejects the opinion of a treating physician [must] explain his [or her] reasons for doing so." Id.

In addition, the SSA has issued regulations providing that so long as a treating physician's "opinion on the issue[] of the nature and severity of [a claimant's] impairment[] is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [a claimant's] case record[,]" it will

-13-

receive "controlling weight." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Section 404.1527(c)(2) makes clear that the SSA "will always give good reasons in [its] notice of determination or decision for the weight [it] gives [each claimant's] treating [physician's] opinion."

## a. ALJ's Reasons for According "Little Weight" to Dr. Muendel's Opinion

The ALJ offered two reasons for giving Dr. Muendel's opinion "little weight." AR 19. He stated "[f]irst . . . [that] no specific caused [sic] had been found to explain [Plaintiff's] symptoms," and "[s]econd, [that] contrary to Dr. Muendel's report, there is no evidence that the claimant suffered any persistent depression during the period at issue." AR 19. Neither of these reasons withstands scrutiny.

First, as the Court discusses more fully below, the ALJ was wrong that a claimant must show a "specific cause[] . . . to explain [his] symptoms[.]" AR 19. Claimants need only demonstrate a "medically determinable physical or mental impairment," 42 U.S.C. §§ 423(d)(1)(A), that "result[s] from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques[,]" 20 C.F.R. 404.1508. There is no support for the ALJ's assumption that the opinion of a physician

-14-

who fails to identify a specific cause of symptoms should be
accorded little weight.

Nor is there any substantial evidence in the record to
contradict Dr. Muendel's opinion. Butler, 353 F.3d at 1003. In
fact, Dr. Muendel's inability "to find a definitive diagnosis"
was consistent with the opinions of the "general physician,
[the] neurologist, and [the] ear, nose, and throat specialist"
in this case, all of whom had the same difficulty. AR 19.

Second, the ALJ's decision to give Dr. Muendel's opinion
"little weight" because of the doctor's comment regarding
depression is baffling. Near the end of his June 20, 1986 letter
discussing Plaintiff's condition, Dr. Muendel noted that
"[s]ince the onset of this, at present time, incurable headache,
[Plaintiff] has also become somewhat depressed." AR 215. The ALJ
misinterpreted this brief, offhand comment as an opinion that
Plaintiff "suffered . . . persistent depression during the
period at issue." AR 19. That is simply not what Dr. Muendel
wrote. Dr. Muendel did not opine that Plaintiff suffered
persistent depression. Nor did he suggest that depression caused
Plaintiff's disability. The ALJ's interpretation of Dr.
Muendel's comment and subsequent determination that the doctor's

-15-

opinion deserved "little weight" are not supported by substantial evidence.

The ALJ was required to give "good reasons," 20 C.F.R. § 404.1527(c)(2), supported by substantial evidence, before discounting Dr. Muendel's opinion, Butler v. Barnhart, 353 F.3d 992, 999 (D.C. Cir. 2004). The reasons he gave fail to meet that test.

### b. Treatment Relationship

Defendant responds that the ALJ was not required to give Dr. Muendel's opinion controlling weight because Dr. Muendel was not, in fact, Plaintiff's treating physician. Def.'s Mot. at 8-9.

The SSA's regulations provide that a claimant's own physician "who provides medical treatment or evaluation" and "has, or has had, an ongoing treatment relationship" with the claimant is a "treating source." 20 C.F.R. § 404.1502. An "ongoing treatment relationship" exists when the "medical evidence establishes" that the claimant "see[s], or ha[s] seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [her] medical condition." Id.

-16-

Evidence in the record shows that Plaintiff consistently referred to Dr. Muendel as his "family doctor" or "personal physician," AR 146, 206, sought "treatment" from him, AR 206, 214-215, and by June 10, 1987 visited him an average of twice a month, AR 221. Yet, the ALJ failed to consider whether Dr. Muendel was a treating physician.

Accordingly, there are two problems with Defendant's argument that Dr. Muendel was not a treating physician. First, there is little support in the record for that contention. In Defendant's Motion, Defendant points out what is clearly a mistake: On a lengthy form dated March 10, 1986, Plaintiff wrote that he first saw Dr. Muendel in July 1985 and that he last saw him in February 1985. Def.'s Mot. at 8-9. Those dates, of course, cannot be accurate. Mr. Gilliland made a mistake. Most likely, he meant to write that he last saw Dr. Muendel in February of 1986, the month before he completed the form Defendant cites. AR 206. Defendant's argument--that Plaintiff should be foreclosed from putting forth Dr. Muendel as his treating physician because Plaintiff once provided an obviously incorrect date on a form sent to the Canadian government--is not persuasive.

Second, as Plaintiff correctly contends, the ALJ entirely failed to consider whether Dr. Muendel was Plaintiff's treating physician. The Court "must judge the propriety of [the agency's determination] solely by the grounds invoked by the agency[,]" SEC v. Chenery 332 U.S. at 196, and therefore, cannot now rely on Defendant's post-hoc justifications, Butler, 353 F.3d at 1002.

### c. Well-Supported by Medically Acceptable Clinical and Laboratory Diagnostic Techniques

20 C.F.R. § 404.1527(c)(2) specifies that a treating physician's opinion must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" in order to receive controlling weight. The ALJ found that the record did not contain evidence of "medical signs or laboratory findings to substantiate Plaintiff's claims of a medically determinable impairment"--the ultimate issue at step two of the five step evaluation process. AR 19. One could read that broader conclusion to suggest that the ALJ believed Dr. Muendel's treatment of Plaintiff failed to involve clinical and laboratory diagnostic techniques.

However, "[w]hile this interpretation may have some intuitive appeal, the ALJ did not articulate this view in his

decision[,]" as he must in order for this Court to rely on it. Butler, 353 F.3d at 1002 (citing Chenery Corp., 332 U.S. at 196) (declining to accept Commissioner's contention that "ALJ must have interpreted" treating physician's opinion that claimant "should never stoop to mean that she should stoop very little or only occasionally"). The ALJ never opined as to whether or not Dr. Muendel's opinion was supported by medically acceptable clinical and laboratory diagnostic techniques. Consequently, the record is bare. For the purposes of a reviewing court considering a motion for judgment of reversal, "it is sufficient that the ALJ did not say this and certainly did not explain it." Jones v. Astrue, 647 F.3d 350, 356 (D.C. Cir. 2011).

### d. Not Inconsistent with Substantial Evidence in the Claimant's Record

Finally, both our Court of Appeals' rulings on treating physicians, as well as the SSA's regulations, permit an ALJ to discount medical opinions in conflict with substantial evidence in the record. Butler, 353 F.3d at 1003 ("A treating physician's report is binding on the fact-finder unless contradicted by substantial evidence."); 20 C.F.R. § 404.1527(c)(2) (Treating physician's opinion otherwise in accordance with regulatory requirements receives controlling weight if "not inconsistent

with the other substantial evidence in [claimant's] case record.").

Defendant argues that "[t]he 'essentially unremarkable' examination and testing results contained in the record are inconsistent with Dr. Muendel's opinion that Mr. Gilliland suffered from extreme limitations associated with a completely disabling impairment." Def.'s Opp'n at 9.

This argument is unpersuasive. The ALJ offered no support for it in his opinion. Instead, he merely stated that no physician was able to reach a definitive diagnosis, that all laboratory results were essentially unremarkable, and that he, therefore, gave Dr. Muendel's opinion "little weight." AR 19. He did not explain why the treating physician's opinion should be given "little weight" just because other laboratory results were unremarkable and failed to lead to a diagnosis.

Moreover, it does not logically follow that merely because the tests performed yielded "essentially unremarkable results" Plaintiff did not suffer "from extreme limitations associated with a completely disabling impairment." Def.'s Opp'n at 9. The doctors at Foothills Hospital referred Plaintiff to a pain management center in order to give him some relief from his

-20-

"blinding" headaches and fatigue even though they could not reach a specific diagnosis of his condition. AR 191, 254.

Finally, Dr. Muendel's most specific finding--that Plaintiff's "intense recurring headache" was "related to the facial nerves over the left eye[,]" AR 214-15--is consistent with notes from the Foothills Hospital that "there [was] some focal tenderness in [Plaintiff's] left supraorbital region." AR 190.

## 2. Proper Weight for Medical Opinions not Deemed Controlling

Plaintiff contends that even if Dr. Muendel's opinion was entitled to less than controlling weight, the ALJ erred by failing to properly assess it in line with the regulations applicable to all medical opinions. Pl.'s Mot. at 7-9. Plaintiff is correct.

20 C.F.R. §§ 404.1527(c) sets out six factors that ALJs must consider when applying weight to any medical opinion: (1) the examining relationship; (2) length, nature, and extent of the treatment relationship; (3) supportability of the opinion with relevant medical evidence; (4) consistency of the opinion with the record as a whole; (5) specialization of the medical source; (6) other factors that tend to support or contradict the medical opinion. The regulation provides that "[u]nless [an ALJ]

-21-

give[s] a treating source's opinion controlling weight . . ., [she] [will] consider all of [these] factors in deciding the weight . . . give[n] [to] any medical opinion." Id.

Plaintiff argues that "there is no indication from the [ALJ's] decision that [he] considered any of these factors in his determination to give Dr. Muendel's medical opinion 'little weight.'" Pl.'s Mot. at 8-9 (emphasis in original). Notably, Defendant's brief does not address this argument.

To be sure, an "ALJ [is] not required to discuss each of the relevant regulatory factors when deciding what weight to give" a medical opinion. Paris v. Astrue, 888 F. Supp. 2d 100, 105 (D.D.C. 2012) (emphasis added). "[T]he regulation requires the ALJ to 'consider' certain factors, but does not require the ALJ to recite and discuss each of the factors in the written decision." Id. In this case, however, there is no indication that the ALJ gave reasonable consideration to any of the relevant factors. Pursuant to the Commissioner's own regulations, the ALJ must "give good reasons" "for the weight" given to Dr. Muendel's opinion. 20 C.F.R. § 404.1527(c)(2). This he did not do.

**B.  Step Two: Severe Medically Determinable Impairment**

At step two of the five-step evaluation process, a claimant must show that she has a "severe medically determinable physical or mental impairment." 20 C.F.R. § 404.1520(a)(4)(ii). The impairment "must result from anatomical, physiological, or psychological abnormalities" and "must be established by medical evidence consisting of signs, symptoms, and laboratory findings." 20 C.F.R. 1508. "An individual's statement as to pain or other symptoms" is not enough. 42 U.S.C. § 423(d)(5)(A). "[T]here must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment[,] . . . [that] could reasonably be expected to produce the pain or other symptoms alleged[.]" Id.

Because claimants experiencing pain cannot rely solely on subjective reports of their own symptoms, "[t]he applicable regulations prescribe a two-step process to determine whether a claimant suffers from symptoms (including pain) that affect her ability to perform basic work activities." Butler, 353 F.3d at 1004 (citing 20 C.F.R. §§ 404.1529 & 416.929). "First, the claimant must adduce 'medical signs or laboratory' findings evidencing a 'medically determinable impairment that could

-23-

reasonably be expected to produce' the alleged pain." Id. The second step focuses on severity and "assesses the persistence and intensity of the claimant's pain as well as the extent to which it impairs her ability to work." Id.

For clarity's sake, the Court notes that a claimant need not provide evidence of a specific medical diagnosis. At several points, the ALJ's opinion makes reference to the absence of a specific diagnosis of the illness giving rise to Plaintiff's symptoms. See, e.g., AR 19 ("[A]ll the results from March 1985 through his February 1986 hospitalization failed to establish a formal medically determinable diagnosis."); AR 19 ("[T]he current record contains no evidence of a medically determinable impairment. Through his hospitalization in March 1986, the claimant had undergone an extensive workup and had been evaluated by a number of specialists, none of whom were able to arrive at a formal diagnosis.").

42 U.S.C. 423(d)(5)(A) speaks of "diagnostic techniques" that may establish a medically determinable impairment, but the statute does not require a particular diagnosis. The same is true of the SSA's implementing regulations. See 20 C.F.R. §404.1508 (Impairments "must be established by medical evidence consisting of signs, symptoms, and laboratory findings[.]"); 20

-24-

C.F.R. §404.1528 ("Signs must be shown by medically acceptable clinical diagnostic techniques. . . . Laboratory findings . . . can be shown by use of [the same].").

To the extent the ALJ determined that Plaintiff's claim failed at step two for lack of a specific medical diagnosis, that determination was error.

### 1. Medically Determinable Impairment Demonstrated by Medical Signs or Laboratory Findings

Plaintiff had the burden of putting forth "medical signs or laboratory findings evidencing a medically determinable impairment that could reasonably be expected to produce [his] alleged pain." Butler, 353 F.3d at 1004 (internal quotation marks omitted). He contends that he met this burden with Dr. Muendel's letter. Plaintiff argues that "Dr. Muendel detailed that Plaintiff's chronic headache condition was confirmed by verifiable signs ('dramatic relief of pain for a short period of time, half an hour to four hours of dulling of the pain[,]' [AR 214]), using medically acceptable clinical diagnostic techniques ('That nerve had been injected by myself and by the anesthesiologist, Dr. Dhiel, with dramatic relief of pain[,]' [AR 214])." Pl.'s Mot. at 11.

Defendant contends that Dr. Muendel's injection technique failed to produce medical signs or laboratory findings because he relied on "Mr. Gilliland's statements regarding relief from pain." Def.'s Opp'n at 12. Defendant notes that symptoms, which are a claimant's "own description of [her] physical or mental impairment," 20 C.F.R. § 404.1528, are insufficient to show a medically determinable impairment. Def.'s Opp'n at 11. However, there is no record evidence as to whether Dr. Muendel based his observation of "dramatic relief of pain" on Plaintiff's statements or on some other observed phenomenon.

The SSA's Program Operations Manual System acknowledges that '"[i]n clinical practice, a sharp distinction between [medical] signs and symptoms cannot always be found." Program Operations Manual System (POMS): DI 24501.020 Symptoms, Signs, and Laboratory Findings (S.S.A. August 9, 2012). Because it is sometimes "necessary to distinguish symptoms from signs and laboratory findings[,]" the Manual offers suggestions as to how to make that distinction. Id. Of particular relevance to this case, "signs can be observed by the clinician or can be elicited in response to a stimulus or action by the clinician." Id. "[T]hey require professional skill and judgment to evaluate

their presence and severity as opposed to the mere noting and reporting of an individual's statements." Id.

The ALJ completely failed to discuss whether Dr. Muendel's injection technique produced the medical signs and laboratory findings necessary to demonstrate a medically determinable impairment. The Court is left to speculate whether the ALJ mistakenly disregarded Dr. Muendel's technique because it fell short of a diagnosis, see discussion supra. pp. 24-25, or whether the ALJ believed, as Defendant now argues, that any results produced by the injections were dependent on Plaintiff's subjective reports of pain. The ALJ's failure to address this point was error. "The judiciary can scarcely perform its assigned review function, limited though it is, without some indication not only of what evidence was credited, but also whether other evidence was rejected rather than simply ignored." Butler, 353 F.3d at 1002 (quoting Brown v. Bowen, 794 F.2d 703, 708 (D.C. Cir. 1986).[3]

---

[3]   Plaintiff also contends that the ALJ should have applied the SSA's most recent guidance regarding the evaluation of migraine headaches. Pl.'s Mot. at 9-10 (citing Social Security Administration, National Question and Answer 09-036 (S.S.A. December 15, 2009)). However, neither Plaintiff nor Dr. Muendel ever allege that Plaintiff suffered specifically from migraine headaches, and the Foothills Hospital report contains evidence tending to rule out a "cluster migraine" diagnosis, AR 191.

### 2. Severity of Plaintiff's Impairment

At step-two, a Social Security claimant must show not just a medically determinable impairment, but a "severe" one. 20 C.F.R. 404.1520 (a)(4)(ii).

Plaintiff argues that the ALJ failed to apply the proper guidelines to determine the severity of Plaintiff's impairment. Pl.'s Mot. at 11-14. In actuality, the ALJ did not consider the issue at all. AR 18-19.

The record is rife with uncontradicted evidence indicating the extreme severity of Plaintiff's symptoms. However, having concluded that Plaintiff was unable to demonstrate the existence of a medically determinable impairment, the ALJ mentioned the issue of severity only to say that Plaintiff had the burden of proving it. AR 18.

### C. Appropriateness of Remand

Courts reviewing determinations by the Commissioner may remand cases for further action or the taking of additional evidence. 42 U.S.C. § 405(g). Plaintiff argues that the Court should exercise its discretion and remand this case to the Commissioner solely for an award of benefits. Pl.'s Mot. at 14-16. He also argues that the already antique record cannot be further developed on remand because the passage of time has

limited the evidence available, Pl.'s Mot. at 15, and that the record contains sufficient evidence to proceed with steps three, four, and five of the evaluation process. Id. Finally, citing Lockard v. Apfel, 175 F.Supp.2d 28, 34 (D.D.C. 2001), Plaintiff notes that the Court should take account of the extraordinary number of years that have passed since Plaintiff filed his initial claim for DIB and place an extra weight in the scale in favor of awarding benefits. Pl.'s Mot. at 15.

Defendant counters with a long list of factual determinations the Court would have to make in order to award benefits. Def.'s Mot. at 13-15. Defendant also argues that an award of benefits would exceed the scope of the Court's review. Def.'s Mot. at 14 ("This Court's role is limited to evaluating 'whether the ALJ's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law.'" Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)).

The Court is very mindful of how truly unfortunate it is that Plaintiff, now over 80 years old, must continue to wait for resolution of his claim. The Court realizes that its own lengthy delay in deciding the Motions has only worsened the situation, and apologizes to Mr. Gilliland for its tardiness. However,

remand for consideration of steps two through five is required. The SSA's regulations instruct that if it finds a claimant is not disabled at any step, it will not continue on to the remaining steps. 20 C.F.R. §404.1520 (a)(4). In this case, the ALJ found Plaintiff to be not disabled at step two, leaving undone any analysis of the remaining steps and necessary factual findings.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Judgment of Reversal is hereby **granted,** and this case is remanded to the Social Security Administration for speedy consideration; and Defendant's Motion for Judgment of Affirmance is hereby **denied**.

September 15, 2014

Gladys Kessler
United States District Judge

**Copies to:** attorneys on record via ECF

-30-